We have read the authorities cited in your briefs. We have looked at the record. You have limited time this morning. Get straight to the heart of your argument. We are probably going to have some questions. Pay attention to the traffic lights. When the red light shines, it is time to stop. If you are answering a question from the court, of course you can finish your answer, but be mindful of our time. If you are answering a question from the court, too, you won't lose any rebuttal time. We will begin, and I should also note, we are going to take a brief recess after the second case to reassemble. Judge Jill Pryor is going to join us for the second case. She will enter the courtroom. We won't start that second case until she does. Judge Lagoa will leave us for the second case, but then we will take a brief recess after the second case and reassemble. Carson v. Monsanto Corporation, Mr. Frederick. Chief Judge Pryor, and may it please the Court, David Frederick for Dr. Carson. Monsanto's Roundup is a poison that kills weeds and can harm humans. For many years, Monsanto had reason to know that its formulated glyphosate product was more dangerous to people than mere glyphosate. It nonetheless never tested, formulated Roundup, or advised users to wear protective gear when using it. This case concerns whether Georgia state law failure to warn claims are preempted by FFRA or EPA actions. The answer is no. As the Supreme Court held in Bates, FFRA nowhere precludes manufacturers from making labels safer. Can I ask you a quick question? So you're obviously focusing on the misbranding requirement, but do you deny that there is a separate requirement in the statute to use the approved label? No. In fact, what was very clear from Bates was that in order to sell the product, it needed to have an approved label, that selling it without an approved label was unlawful. The question, though, is whether merely getting a label precludes a state law claim that is parallel to the misbranding claim. And the Bates Court unanimously said, no, that's not accurate, that a misbranding claim that is parallel to a state failure to warn claim merely provides a state law remedy which is absent from Federal law. The duty remains the same. So the requirement is that the label be adequate for safe use, and you can have a registered label, as the Supreme Court said, but, quote, nevertheless be misbranded. To what extent does your position turn on this unique provision in FIFRA, this 136af2, that, you know, seems to say approval isn't conclusive, you still have to avoid misbranding? How does that make this case unique and distinguishable from Regal? From? Regal. Yes. There is no similar provision under the medical device amendments. To my knowledge, it is a unique provision in most of the Federal statutes that have the different to or in addition to requirements language. And the reason why that's important, Your Honor, is because the fact that a manufacturer can be registered but nonetheless still have a label that is misbranded provides a role for States to participate in this very complex State system. Let me ask you just one follow-up, and then I'll be quiet. So 136af2 is unique so far as I can tell in this statute, but isn't it really just sort of declaratory of what the law always is? I mean, isn't it likewise true under the regime in Regal that approval isn't conclusive? Can't you also be approved but nonetheless misbranded in that regime as well? Well, there's not as I recall, there was not a misbranding argument in Regal itself. The question was whether there was a State failure-to-warn claim that could go above the specific requirements that the Supreme Court said you cannot do because of the peculiar regime of the medical device amendments. There, the Court held there was express preemption because the State law requirements were seeking to impose a greater degree of what was atmospheric pressure for the catheter that it was being expanded, and the Court said you can't do that because the Feds had already established what the baseline increase in catheter expansion could be. And so that was an express preemption case. But here, and I would note, Judge Newsom, that Justice Stevens, who wrote the majority opinion in Bates, joined the Court's opinion on this point in Regal, writing separately to explain differences in the history between these two provisions. There are lots of roles for States to participate in the insecticide area of regulation. States can ban pesticides. States can limit uses of pesticides. In fact, the Roundup label, if you were to look at it online, you would find there are State-specific use restrictions for Fresno, Cal, and California, California generally as to certain products, South Dakota, Arizona. And so it simply can't be the case that Monsanto can't create a State-specific warning if that is appropriate for the particular situation. Now, I would point out that the Ninth Circuit in the Hardiman case took the very provision, Judge Newsom, that you isolated and said it would be unusual and, in fact, it can't be the case that for a label to be registered, but not anything more than prima facie evidence of the legislation, and have that provision preempt State law so that if you can be misbranded and you have a parallel State claim, it can't be the case that merely getting the registration is going to preclude the State law from providing a remedy for a violation of an equivalent duty. So — Roberts. Let me just follow up just really quickly. So — but it — so even if there weren't sort of misbranding claims in Regal, would the regime in Regal have preempted the sort of claim that we have here, a failure-to-warn claim that is seeking to sort of operationalize, if you will, the misbranding requirement? No. For precisely the reason, Judge Newsom, that FFRA provides a role, and it says States can ban the pesticide. States can limit the uses beyond what are permitted under Federal law. That is a completely different regime than the medical-device amendments where the Supreme Court said if the — if the FDA has approved a medical device for very particular uses and it has done a safety analysis, it can't be for in addition to those safety requirements. Here, the entire structure of this regime is entirely different. And the AF2 provision that you've alluded to was in the original 1947 version of FFRA. It was only later that the labeling requirements in addition to or different from came in, and there was no mention of why Congress would have intended to change the normal rule that obtaining a label through the registration process is going to somehow run afoul of any conflicting State law requirement. Now — Can I bring you back to the first question we asked the parties to brief? And that is, regardless of how you see 136 V.B. operating in this case, is a Federal court supposed to do a force-of-law analysis when there's an express preemption provision like this one? I think that, yes, it does, Judge Jordan. The reason is that the word requirements, as the Supreme Court in Bates explained, means a law that has to be obeyed. A requirement, whether it's imposed through State law or Federal law, has to be a law in force of law. But doesn't that conflate agency action that has the force of law with a rule of law, the focus of Bates? Isn't it really, in the express preemption context, more important to know what the — well, isn't the real question whether there's a rule of law at the State level that is preempted? Judge Breyer, I think what's important is that for the supremacy clause of the Constitution to apply, there has to be law. There can't be agency opinion. There can't be agency interpretation. But wouldn't the statute itself be the law? The express preemption provision is the law. It is, but it uses the word requirements. And so you would be giving the word requirements, meaning requirements, as the Supreme Court in Bates said, has to be law. And so the question — Has to be a rule of law. Isn't that what the court in Bates said? Yes, that's correct, Judge Breyer. And didn't it also compare, when it was talking about requirements, didn't it also compare the State law rules to either statutory text or to regulations that had been promulgated with notice and comment? That's correct. So does it have to be one of those two things to be expressly preempted? Yes. And just so I understand, is that true with respect to this particular preemption provision because it uses the word requirements, or is it in the ether of preemption law that Congress couldn't — it doesn't have the power to create an express preemption provision that covers or refers to things other than force-of-law regulations? I think that for the supremacy clause to apply vel non, there has to be law, it has to be Federal, and it has to seek to displace or preempt contrary State law. It would — I think that's just a basic operation of how the supremacy clause works. And so in looking at what is a requirement, the statute uses that word. The Supreme Court gave it meaning as force of law. We have said in our brief that the law that is necessary to be viewing that displacement or preemption of State law has to be a rule. Now, Judge Rosenbaum, it could be a rule promulgated through notice and comment rulemaking. And I would note that in footnote 28 of the Supreme Court's opinion in Bates, the Court invited the EPA to give further content through notice and comment rulemaking to the misbranding provision specifically. In the 18 years since that decision, the EPA has not chosen to do so, relying instead on the language of the statute, which is at 136Q1G, to provide this adequacy of the warnings. And so when you look at whether or not Georgia law, which provides that if there's reason to know or knowledge of a safety hazard, the manufacturer has a duty to warn people, that tracks exactly with the language of this branding provision itself. So much so that Monsanto doesn't even argue here that Georgia law somehow imposes some requirement that is different from, if anything, the Georgia law duty is somewhat narrower. But we know from Bates itself that having a narrower requirement under State law is not sufficient to be in addition to, because it would be odd that you would have a State law remedy for a violation of a Federal misbranding provision, and that that would be somehow displaced. Is your argument — I'm sorry, go ahead. Is the only way that EPA action can rise to the level of a requirement that EPA must go through notice and comment rulemaking? Is that your position? Yes. In the case where we're talking about something other than the registration of a product itself, because the statute speaks to the registration itself. So if I could just park that to the side, Judge Branch, the reason why the EPA has to act with notice and comment rulemaking is because otherwise it's simply offering an interpretation or a scientific evaluation or an advisory opinion that is not specific to the particular product that we're talking about here. You'll hear a lot, I'm sure, about various EPA studies concerning glyphosate or its analysis, but that doesn't actually address the product that we have at issue here, which is formulated glyphosate with POE, a surfactant that is believed to be, and scientists have argued, is — makes the glyphosate much more dangerous. That's why it's banned in many European nations when this particular surfactant is combined with glyphosate. And so the question of whether or not EPA can preempt State law has to go to whether EPA has operated in the normal framework. What the other side seeks to do is to empower agencies through the mere issuance of letters to displace constitutionally enacted State law provisions, and that would empower agencies in a way that I think ought to be quite concerning to the Court, given our Federalist system of government and the specific realm within FFRA that Congress led States to possess. Mr. Frederick, let me ask you about another matter that ought to be of concern to the Court, and that's whether or not we have an actual case or controversy under the Supreme Court's collusive lawsuits doctrine. So, I mean, why would Monsanto pay you, your client, $100,000 in exchange for filing the appeal and then give you more money if you win, if for any reason other than to create a circuit split? I cannot think of a reason, Judge Wilson. Proper? Well — An abuse of the Court's process? Even if it — I mean, even if it doesn't deprive the Court of Jurisdiction? Judge Wilson, I think that the facts of this are well known to the Court. How the Court evaluates that is a question that it didn't ask the parties to brief, so I do not have a brief to defend as to — Well, we have an obligation to consider our jurisdiction at every stage of the — every stage of the appeal, though. Judge Wilson, I think the best answer that I can give you is that no appellate judge has ruled for Monsanto to find preemption. Judge Ryan Nelson's opinion for the Hardiman Court, I think, very carefully laid out all the reasons why Monsanto's argument is incorrect. Judge Smith on the Ninth Circuit agreed except as to the punitive damages part. The California Supreme Court has ruled the same way in the Piliad case. And so after the Court had divided the views of the Solicitor General, which are laid out in an addendum to our papers, and I would urge the Court to look at that brief carefully because what the Court — what the Justice Department explains is that there's a really clear difference between chronic and acute toxicity and risks. And I think what is going on — Then you have to give the $100,000 back to Monsanto, right? That's correct. That's correct. If the Court has no further questions at this time, I'll save for rebuttal. I don't hear any. Thank you, Mr. Frederick. Mr. Zients? Thank you, Chief Judge Breyer. Good morning, Your Honors, and may it please the Court. If I could start, I think, with the questions that Judges Rosenbaum and Branch asked about this question of regulations. And I think it's a really important place to start that we know that preemption can turn on what EPA does. EPA gives content to FIFRA's misbranding standards, to FIFRA's requirements through the actions that it takes. So I think the question is, why would that only be limited to notice-and-comment rulemaking? Certainly, we're all well familiar with notice-and-comment rulemaking because that is a common way that Congress authorizes an agency to act. Congress, in this case, authorized this agency to act in another very formal way. Through registration procedures, EPA considers a wealth of data and scientific information, and it is specifically required under Section 136A.C.5.B. to make a determination about whether the label has every safety warning that is required to protect health. And as Judge Newsom noted before, there is also a requirement after that process runs its course to use the label that EPA approved without And you add that to the requirement that the registrant use that label, you have a pesticide-specific requirement in exactly the same way that there is a device-specific requirement in Regal. But I think there is a difference because in Regal, the language of the statute actually says, with respect to the device, and it mentions the device three other times in addition to that in the statute. And here, it doesn't say that. On top of that, we have the separate provision which says that a determination is not a registration is not legally binding, a determination of compliance. So doesn't that make this case different, this statute different from the Federal Food, Drug, and Cosmetic Act? Sure, Your Honor. On the Section 136AF2, I think that it's very important to focus on exactly what that provision doesn't say. It says, registration of an article shall not be a defense, and registration is prima facie evidence of compliance with FFRA's requirements. Only prima facie. Only prima facie, but also I think, and this is a critical point, only registration. So we are not saying that a defendant can say, this product is registered. I can do what I want. I can't commit a FFRA offense. I can't be charged with a State law tort violation. The registration was not a defense in Bates. When there was a labeling issue that the agency simply had exercised its authority to waive review of, an agent, excuse me, a registrant could misbrand its label by adding a claim that wasn't approved by the F, excuse me, by the EPA. You could potentially have a situation that the EPA has enforced where there's a violation of a separate provision of FFRA that requires if new adverse information comes to your attention, you have an obligation to bring that information to the agency. So registration is not a defense in any of those situations. At most, registration is prima facie evidence of compliance. Here we have something different. Are you saying that whatever the EPA approves label-wise is now a FFRA requirement? Your Honor, when EPA considers a specific issue and decides, you know, whether a particular health warning is warranted or not, is required or not, then that produces a pesticide-specific requirement through the exact same analysis that the language here or there might be different. I think it's worth noting that in Bates, the Supreme Court actually noted a specific connection between FFRA and the medical device amendments. The precursor to Regal was a case called Lohr, and the decision in Bates says, we look, we take great support for this ruling today, this parallel requirements rule from Lohr. So now we're just at the next step. We're at the Regal stage where we say, okay, how do you determine the requirements? And under the exact same preemption language, you look at the pesticide-specific determination. So are we looking at EPA's registration decisions, re-registration decisions, and review determinations? Your Honor, I think you are looking at the labeling determinations, the determinations of what safety warnings go on the label that EPA has engaged in in a continuous string. If you start with 1986 with the registration standards, there's actually a section of the registration standards that says required labeling. It says what labels are required. That's not optional. That is what the registrant under FFRA had to put on the label, and a cancer warning is not there. The thing that's weird to me about this case, though, is that you seem to have two potentially dueling requirements. You've got one requirement that says, use the EPA-approved label. That's the one that you want to focus on. You've got another one that says, don't be misbranded. That's the one that Mr. Frederick wants to focus on. What do we do when the State failure to warn duty is inconsistent with one of those requirements, namely the use the approved EPA label, the EPA-approved label, but not inconsistent with the second one? Don't be misbranded. It's an effort to operationalize that requirement. Sure. Judge Newsom, I think Regal shows us the way to harmonize, and Regal in the key part of its analysis focuses on two things. It is not just the requirement to adhere to the label. It's also the fact that in Regal, the FDA was specifically required to make a determination about safety and effectiveness. And here, the EPA is specifically required to determine whether the health warnings that are required under FFRA are present. So I think when you put those together, you get pesticide-specific requirements in exactly the same way that you have requirements. Why isn't the answer to Judge Newsom's question impossibility? That this is really, to solve that problem, someone in Monsanto's position could say, you know, it's impossible for us to change this label because the EPA won't let us do it, and that that is the theory of preemption that is actually the one that solves this problem. Your Honor, we're very happy for that to be the preemption theory that solves the problem. We think we have two really strong preemption theories here. What I would say is I don't think it's right to collapse sort of the express preemption provision in the statute just into impossibility. You know, in Regal, the exact argument was made was, was no one saying that the EPA and that the FDA wouldn't allow this warning if you went and asked for it, and it was enough that the FDA decided it wasn't necessary, decided it wasn't required under the statute. And so it was in addition to that for State law to require it. The impossibility preemption is a somewhat more difficult showing to make where it's actually the EPA would reject it. But here, that's met too. The EPA would reject this. The EPA has determined over the course of decades that this product does not cause cancer. I guess the thing is, it seems like the arguments that you're making, and maybe I'm just misunderstanding them, but it seems like the arguments that you're making about the EPA determination that the product doesn't cause cancer are really more arguments that go to the impossibility of changing the label than whether the EPA has actually made some kind of labeling determination that's binding on States. Sure, Your Honor. I think you can get there either way, and I think we get to the same result of preemption. In Regal, you had, for purposes of express preemption, the fact that the agency made a safety and labeling determination, and then the registrant was, in that case the applicant, was required to use that label. That produced a federal requirement that did preempt a State law in addition to that. But entirely separate from that, I agree with you, Judge Brasher. There is another way of looking at this, which is from the perspective of impossibility, which is over the course of decades, EPA has said over and over, we do not think that this product causes cancer. The problem is it just doesn't seem to me to be clear enough from this record that you can establish an impossibility defense. Drexel Chemical was allowed to change its label. We know there are internal studies at the agency that support what you're saying, but I don't think we have anything formal from the agency that has anything that carries the force of law that knows that they would not, they will not approve that label change. Your Honor, if I could respectfully push back on that and give one example, the 1993 re-registration eligibility decision makes a finding that it classified glyphosate at the lowest possible level for cancer, evidence of non-carcinogenicity in humans. So we have, through this very formal process, Section 136A-1 of the statute says that this culminates in regulatory action by the administrator. But that was 30 years ago, right? I mean, couldn't the science have evolved in the meantime? Is a determination, however formal, 30 years ago, good enough for us in 2023? Your Honor, I think that I'm giving that as an example of one of the many steps along the way where EPA has done that throughout, for example, the 2000s. EPA had an obligation to determine tolerances, the amount of a pesticide that's allowed to be left on food. And it said, you know, in a series of notice and comment rulemakings establishing tolerances, glyphosate does not cause cancer. So we really have very formal actions throughout the entire course of the time period that Dr. Carson alleges that he was using the product where we have the agency saying, you know, we don't think this causes cancer. We accept your argument. Wouldn't we have to ignore the presumption against statutory constructions that preempt the police power of the state to regulate for the health and safety and welfare of its citizens unless it's clear and manifest, which is what the Supreme Court said we have to do in Bates v. Dow Agro? Sure, Your Honor. You know, if I could take that for both. I think it's a slightly different answer for both impossibility preemption and express preemption. For impossibility preemption, we agree there is a presumption against preemption. The way that has been operationalized by the Supreme Court in cases like Merck v. Albrecht is to require, you know, clear evidence that the agency would reject the warning. We have that. So I don't think you're ignoring the preemption. I don't see it. Okay, Your Honor. You fully informed the agency of the justifications for the state law requirements and that it has informed you that it would not approve modifying the label to conform to Georgia law. I don't think you've got clear evidence of that. Sure. Your Honor, I'm happy to go more into that, but I think maybe the wiser thing to do would be to answer Judge Wilson's question as to express preemption in terms of the role of the presumption there. And I think the Supreme Court's cases have been a little bit, you know, at times shifted on this. The most recent pronouncements from the Supreme Court, you know, case Puerto Rico v. Franklin, the Supreme Court says very clearly that when it comes to express preemption, it's not about, you know, construing broadly or construing narrowly. You just construe the text of the statute, and preemption is what Congress said. Now, I do want to acknowledge that there have been times, including Bates, where the Supreme Court has suggested that that presumption does play some role. And so I think the way Bates was using that was at this macro-level decision. And the core holding of Bates was just the defendant had said this preemption provision preempts any State law tort claim, not even claims that are exactly the same between State and Federal law. And the Supreme Court looked to the presumption, among other things, in concluding that it would adopt a parallel requirements rule. We're now at the next level down of how that applies. I don't think the presumption does any more work. And so the — has the Supreme Court ever applied force of law in an express preemption case? We have not seen it, Your Honor, no. Okay. I was going to ask. I've heard you describe a lot of reasons why you think the certain things here are requirements, but I'm not sure I've distilled a test for you that we could apply in other cases. Your Honor, the test that I would propose is if EPA has considered an issue and made a determination about that issue, whether that — whether a particular health warning is required on the label. That establishes a pesticide-specific requirement. At any level at all of EPA? Acting formally, no, Your Honor. Acting through — you know, and this is where to go to the force of law question. I think even if you were to sort of apply a force of law idea, what the Supreme Court said about force of law and Merck v. Albrecht, essentially it's a question of is the agency exercising congressionally delegated authority. So if the EPA sent an e-mail that said, I've thought about this, and I don't think you need a warning here, that would not establish the requirement. Here we have the agency has a statutory obligation to go through procedures. They are quite formal. The EPA in the brief that it filed in the Ninth Circuit says the label approval is a very formal affair. Exercising congressionally delegated authority under Section 136A, 136A-1, several stages culminating in what Congress called regulatory action by the administrator. So our view is when the agency does that for a pesticide and makes a determination, it is considered a specific safety issue. Does a product cause cancer? It has imposed required labeling for that product, and it has not required a label that says that this particular type of warning is necessary to protect health. I think that's the standard. That establishes, just like in Regal, a product-specific requirement, and a State cannot add requirements that are in addition to or different from that. Can I ask you a question? You mentioned Bates a second ago. What do you make of the language in Bates that says a State law labeling requirement is not preempted by 136VB if it is equivalent to and fully consistent with FFRA's misbranding provisions? Full stop. It doesn't sound like this one is. So why doesn't that language in Bates resolve the case against you? Because, Your Honor, I think the Supreme Court was answering a kind of macro question. Are we going to have a parallel requirements rule or an everything is preempted rule? The Supreme Court said a parallel requirements rule. If it is inconsistent with the State laws, consistent with the Federal misbranding requirement, then that can go forward. But what the Supreme Court also says is it has to be genuinely equivalent. And it gave some examples, but it really didn't go much beyond that. So now we have the added layer that comes in through Regal interpreting very similar preemption language of what happens when the agency gives content to the misbranding standards. But didn't Bates say, maybe it's Bates, that says the agency gives content to or further refines the misbranding statute through regulations? Yes. Your Honor, I read Bates to say not to say only through regulations. And, in fact, the Bates court then drops a footnote, as I recall, that says, hey, this hasn't really happened, right? We note that the EPA really hasn't done this. Yes, Your Honor. And so I think the Supreme Court had a particular case in front of it. It had a case involving efficacy where Congress had authorized the agency to waive review of a very broad category of issues, efficacy issues for pesticides. EPA had exercised that authority. And the Supreme Court at a few different times in opinion notes that the EPA had never made any determination, never said anything about the specific warning issue that the plaintiff was claiming violated the misbranding statute. In that context, it makes a lot of sense that the Supreme Court was focused on general-level requirements that would, if anywhere, have come within regulations. I just don't think the Supreme Court had any reason to be thinking about the other ways in which EPA gives content. One of the ways that EPA gives content to the requirements under FFRA is through this very formal, statutorily authorized and mandated process for considering this. In the 1980s, EPA actually conducted a rulemaking, and it said, and this was 1984, we just can't decide what the label should say on a case on a regulatory basis in terms of notice and comment rulemaking for every single pesticide. We're going to do it case by case. Congress actually acted on that background and added these re-registration provisions, culminating in regulatory action by the administrator. So I think what the central lesson from Bates is that what EPA does matter. And certainly, because of the context of the case, it makes sense that the Supreme Court was focused on regulations as a key way that the EPA makes, elaborates on the general requirements under FFRA. But I don't think it excludes that there could be pesticide-specific requirements under FFRA. Just like on virtually identical preemption language, there are device-specific requirements under the medical device amendment. Counsel, your client won in the district court, and yet you're bankrolling your client's appeal. Why isn't that improper? Why doesn't that deprive us of jurisdiction in the absence of interests of the parties that are adverse to one another? I mean, I'm just speaking for myself, but it seems improper or an abuse of the court's process for a settlement agreement like this to come before the court. Sure, Your Honor. You know, I respectfully disagree with the characterization of the settlement. We did not win in the district court. We won in terms of one of our claims being dismissed. Others were not. So we were facing a situation where the litigation was going to continue. There is risk to any litigation, and the parties had an arm's-length settlement negotiation where they agreed that a path forward was to resolve the other claims and to have the amount of the plaintiff's recovery contingent on this appeal. So you're not paying them in order to create law favorable to their clients, to create a circuit split? I want to be very clear, and I think we've been up front with the court from the beginning of this case. We think that we have a meritorious preemption argument here, and we think it should be considered by this court. We think it ultimately should be considered. So the question, it seems to me, that Judge Wilson is asking really, though, is it may be that you have a justiciable controversy in the district court that you've settled, but the question is the way this settlement is structured, have you colluded in a way that this is non-adversarial here and non-justiciable here on appeal? No, Your Honor. You're paying your adversary if they win. Your Honor, that is a common—this is a HILO settlement that the Supreme Court and a number of other circuits have held is entirely consistent with a case for controversy. The key question— Not like this. Not like this, though. Respectfully, Your Honor, in these other cases, I don't know that the actual settlement agreements are in the record, so I don't know what every exact provision looks like. But what I would say is what we have here is we had a continuing case that was going to go forward after the district court's ruling. I see my time's up, but if I— You may finish your answer. I know Judge Choflat wants to ask one question. He'll get the last question, and then we'll be done. Sure, Your Honor. I would just say the parties negotiated at arm's length decided that a way that they could move this forward that was in the mutual interest of both parties was to have an appeal that would decide, you know, the amount of the plaintiff's recovery. You know, when there is that—where is that financial stake that depends on the outcome of the appeal? The Supreme Court has said that that is a live case for controversy. You know, other circuits have said, even if it seems like it looks— Some cases, the Third Circuit one time said something looked like a contrivance because one of the parties really just wanted a determination of the legal issue. This is, I think, a Wheeling-Pittsburgh-Steele case. Okay. Let's get to Judge Choflat's question. Boiling it all down, is it your position that when the agency goes through the process, it itself yields, by definition, a requirement? The process necessarily yields a requirement. I think just like in Regal, when the agency goes through that process— Or an adjudication. Your Honor, I actually think this could be considered an adjudication, an informal adjudication, because Congress gave— But your position, though, is the process itself yields a requirement. Yes, Your Honor. Because of the statutory framework and the specific requirements under the statute and the delegation of responsibilities to go through this very process. Whatever the statute says you're supposed to do, that yields a requirement. That yields a pesticide-specific requirement. Okay. Yes, Your Honor. Okay. Thank you, Mr. Science. We have your case. We're going to hear from Mr. Frederick on rebuttal. He has five minutes. Thank you. Let me start, Your Honors, with the duly— Before you start, let me get a question in. Sure. Because I think I may not be able to by the time you finish your five minutes. So let me redraft 136VB for you. VB? I'm going to create a new one. Okay. And my question is going to be, with my new statute, do you have to conduct an independent force of law analysis? Okay? So here goes. A state shall not impose or continue any law or requirement, so far the same, that imposes liability based on a failure-to-warn theory predicated on an approved label. So if you've got an approved label, the express preemption provision says you can't have a failure-to-warn claim. I think under that rewritten hypothetical, Judge Jordan, there would be preemption. Why? Do you have to do an independent force of law analysis? No. So what you do is you It has the word requirement. It precludes the state from acting. That is the requirement under your hypothetical. The state is no longer allowed to have a failure-to-warn claim. But VB, as currently drafted, refers to a state, too. Such state shall not impose or continue in effect. That's no different than my hypothetical. State shall not impose or continue any law or requirement. Actually, it is different, Judge Jordan. In what way? In what way? Well, the Supreme Court kind of had Not in terms of whether there's preemption. My question is not that granular. The question is whether or not, with the new drafted statute, you have to conduct an independent force of law analysis. The statute is the force of law under your hypothetical. Because? Because the statute precludes the state from having a failure-to-warn claim if it runs a foul or if it questions the label. How about if it says any claim predicated on an approved label? That is the same answer. The statute is the force of law that says the state cannot do something contrary to what is on the label. We don't have that here. So your position is not, as I take it, that when you have an express preemption provision, you are required to conduct an independent force of law analysis, but that this statute is not specific enough, and so you have to conduct a force of law analysis. That's right. That's because the Court used the word requirements. And I think, Judge Jordan, the Supreme Court in Bates actually did a rewrite-the-statute kind of hypothetical, and it came to the answer that I think I just gave you. If I could start with the dueling requirements that Judge Newsom and Judge Wilson posited, Bates, in the background of the State tort law, came to the same kind of result. But what it said was that because there was this long history of State law litigation for pesticide failure-to-warm, it can't be presumed that Congress intended to change that. So I think that the dueling part of the statute has already been resolved by the Supreme Court. Judge Brasher, you asked about the impossibility point. Let me point you to two regulations that are important here. Under 152.44, Monsanto could have provided a label change with notification. It amended the Roundup label 44 times using that provision. Monsanto's parent, Bayer, put a label change without a notification under 152.46. And what the Larvin example does, which we cite in our reply brief on page 8 in the Hardiman Court discussed in footnote 10, was a cancer warning. Now, we might have an argument about whether a warning about cancer is a minor or a major notification, but I don't think we can argue that telling people to wear protective gear when they use a chemical would be a relatively minor warning that could have saved Dr. Carson from getting cancer. Chief Judge Pryor, you talked about no clear evidence in Judge Grant. You raised the question about the glyphosate. I want to point the However, additional research could also be performed to determine whether formulation components such as surfactants influence the toxicity of glyphosate formulations. That was in 2017. So it just simply cannot be the case that there is clear evidence that if presented with a cancer warning, the EPA would have rejected it. And we know that because last year in 2022, when confronted with the Proposition 65 warning that California was seeking to impose, the EPA said, it's okay if you put that language, which involved the recognition of the IARC's notification of cancer warnings. Can I ask you just a quick question about impossibility of preemption? And this may carry you a little bit beyond your time, but it's something that I genuinely don't understand. So is your position that there is a label change that could have been made here that was sufficiently minor that it could have been made unilaterally, sort of CBE style, by analogy to Merck? Yes, that's the Larvin example, where Bayer said, we're required to tell you that you could get cancer if you use this product. And if we're outside minor modification land, now we're in sort of uncharted territory, right? Because it's not quite mincing in the sense that there's some external impediment to the label change, but it's not quite why it's Merck in the sense that you can just do it subject to ex-post agency veto. You need the agency's ex-ante approval, right? Yes, but what the SG explained in page 11 of the invitation brief that it filed last year in Hardeman was that the EPA does not typically do chronic risk evaluations in the registration process. It does what's called acute toxicity analysis. There is direct and clear preemption of acute toxicity. This is if I use the product and it gets in my eyes, I could go blind, okay? A chronic cancer risk over prolonged use of time is not something that the EPA typically evaluates in the registration process because it has post-registration requirements to supply information, and those would be basically have no purpose if you accepted Monsanto's argument. Thank you, Mr. Frederick. We have your case. We're going to move to the second one. One of our judges will join us and one will leave us. Drazen versus Penta. Okay. Thank you.